United States District Court
Southern District of Texas
FILED

MAY 23 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DIRECTV, Inc., | § | |
| Plaintiff, | § § § | |
| V. | § | No. CIV. B-03-092 |
| HAROLD L. JONES | § § § | |
| Defendant. | § | |

### PLAINTIFF DIRECTV, INC.'S ORIGINAL COMPLAINT

Plaintiff, DIRECTV, Inc., ("DIRECTV"), by its attorney, complaining of the Defendant, Harold L. Jones, ("Defendant" or "Defendant Jones") respectfully sets forth and alleges, upon information and belief, as follows:

### I. PRELIMINARY STATEMENT

1. This lawsuit involves the surreptitious importation, possession and use of illegal devices and equipment designed to intercept and decrypt DIRECTV's protected satellite communications, ultimately allowing for the free viewing of television programming. Federal communication and state laws prohibit the importation, possession and use of the devices and equipment in question. DIRECTV brings this lawsuit seeking damages and injunctive relief against the defendant for the importation, possession and unauthorized access to its satellite communication signals.

### II. FACTS REGARDING DIRECTV'S BUSINESS OPERATIONS & SUPPORTING SATELLITE PIRACY CLAIMS

2. DIRECTV is a California-based company in the business of distributing satellite television broadcasts throughout the United States. Over the company's life, DIRECTV has

invested billions of dollars to develop a satellite system capable of transmitting various digitized video and audio signals to homes and businesses nationwide to be used for entertainment purposes (the "Satellite Programming"). DIRECTV relays digital signals from within the United States up to satellites hovering thousands of miles above Earth. Those signals are then broadcast back to Earth. DIRECTV's Satellite Programming is received through the use of a fixed outdoor satellite dish ("Satellite Dish"), designed to capture satellite signals. The Satellite Dish is connected by cable to an indoor satellite receiver ("Satellite Receiver"), which is then connected by cable to a television monitor.

3. While the signal is beamed from space to various areas and can be received by installing a Satellite Dish, the signal is not usable without paying DIRECTV a fee to use its television broadcast services. To prevent the unauthorized reception and use of DIRECTV's broadcasts by individuals who have not paid for DIRECTV's service, DIRECTV uses encryption technology to digitally scramble the signal making the signal unusable until it is unscrambled. The Satellite Receiver is the component that makes descrambling possible. Each Satellite Receiver contains a removable access card that manages the opening and closing of television channels offered by DIRECTV (the "Access Card"). An access card is identical in size and shape to a credit card, but also holds a computer-type chip that stores and applies the information necessary to unscramble the satellite signals being received through the Satellite Dish. When properly operated, access cards can be electronically programmed by DIRECTV to close or open television channels. It is, however, the programmable nature of these access cards that is the primary basis for this dispute.

4. Once a DIRECTV customer pays a subscription fee, DIRECTV electronically directs the Access Card to unscramble portions of the satellite signal allowing the customer to

view programs on their televisions and/or listen to certain high quality audio programs communicated by satellite. Through the Access Card, DIRECTV can provide many different levels of service to individual customers. Each customer usually pays for the service on a monthly basis. In addition to the programming packages paid for on a monthly basis, certain DIRECTV satellite broadcasts, such as professional sports packages and pay-per-view movies, remain blocked and can be spontaneously purchased on a per-show or per-package basis using the customer's remote control or through a telephone call to DIRECTV. The Access Card records those purchases.

5.   DIRECTV's main revenue source is subscriptions paid by properly authorized users of its signals; obviously then, DIRECTV has a significant interest in preventing the unauthorized receipt and use of DIRECTV Satellite Programming. Despite the encryption technology used to protect the DIRECTV signal, there are many individuals within the United States and surrounding foreign countries involved in the development of devices and equipment (including the illegal programming of valid Access Cards) used to surreptitiously pirate DIRECTV's signals (collectively referred to as "Pirate Access Devices"). The use of such Pirate Access Devices commonly provides the user with access to all of DIRECTV's Satellite Programming with no payment to the company. More importantly, the interest in Pirate Access Devices can support the business operations of individuals willing to engage in the design and distribution of these devices for profit.

6.   On or about May 25, 2001, DIRECTV executed Writs of Seizure, with the assistance of local law enforcement, at the mail shipping facility used by several major distributors of Pirate Access Devices, including Vector Technologies, DSS-Stuff, Shutt, Inc., Intertek, DSS-Hangout, Whiteviper, and Canadian Security and Technology (collectively

referred hereinafter to as the "Fulfillment Pirate Group"). During and subsequent to the raids, DIRECTV obtained a substantial body of shipping records, email communications, credit card receipts and other records. Each of the records confirmed the existence of a distribution source for the country-wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's Satellite Programming. More pertinently, the records evidence Defendant's additional purchases of Pirate Access Devices from a member of the Fulfillment Pirate Group. In reliance on those records and other information, and upon information and belief, DIRECTV brings this lawsuit against the Defendant.

7.　Defendant's activities violate federal telecommunication and wiretapping laws and state statutory and common law. As a result of Defendant's decisions to obtain Pirate Access Devices and the detrimental impact that such activities have on the company, DIRECTV brings this action seeking damages and injunctive relief against Defendant's continued possession and/or use of Pirate Access Devices.

### III. JURISDICTION

8.　DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

9.　This lawsuit is brought pursuant to several federal statutes prohibiting the interception of satellite communications, including the Cable Communications Policy Act of 1984, (47 U.S.C. §§521, *et seq.*)(the "Communications Act"), and the Electronic Communications Policy Act of 1986, (18 U.S.C. §2510, *et. seq.*), for violations of Texas law (TEX. CIV. PRAC. & REM. CODE §123, *et seq.*), for violations of compatible state law and as an action for injunctive relief and damages for the improper receipt, transmission, and use of satellite programming signals. This Court has jurisdiction of the subject matter to this action

under 28 U.S.C. §1331, pursuant to which the United States District Courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. Moreover, this Court has supplemental jurisdiction over DIRECTV's state law claims pursuant to 28 U.S.C. §1367.

10. This Court has personal jurisdiction over the parties in this action. The activities over which DIRECTV complains and giving rise to this action took place in the State of Texas; more particularly, the defendant's acts of violating federal laws and DIRECTV's proprietary rights as distributor of the satellite programming transmission signals took place within the Southern District of Texas. Further, upon information and belief, the defendant resides within the State of Texas; thus, this Court has personal jurisdiction over the defendant.

## IV. VENUE

11. Venue is proper in this the United States District Court for the Southern District of Texas under 28 U.S.C. §§1391(b) as this action arises under the laws of the United States and the defendant resides within the State of Texas. Moreover, a substantial part of the events or omissions giving rise to the claims occurred within the Southern District for the State of Texas (28 U.S.C. §124).

## V. PARTIES

12. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

13. Plaintiff, DIRECTV, is at all times relevant hereto a corporation incorporated under the laws of the State of California. As a major distributor of satellite television programming, DIRECTV has a significant interest in maintaining and securing the integrity of its

satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

### *Defendant Jones Purchases From the Fulfillment Pirate Group*

14.  Defendant Jones purchased no fewer than twenty-four (24) Pirate Access Devices from the Fulfillment Pirate Distribution Group. Defendant Jones placed each order using interstate or foreign wire facilities, and received orders through the United States Postal Service or commercial mail carrier. Defendant Jones purchases included:

(a)  On or about June 23, 2000, Defendant Jones purchased one (1) programmer invoiced as a "Viper Smart Card Reader/Writer" from the Fulfillment Pirate Group.

(b)  On or about June 28, 2000, Defendant Jones purchased one (1) unlooper invoiced as a "Wildthing 2 Clone Unlooper" from the Fulfillment Pirate Group.

(c)  On or about August 17, 2000, Defendant Jones purchased one (1) programmer invoiced as a "Viper Smart Card Reader/Writer" from the Fulfillment Pirate Group.

(d)  On or about April 4, 2001, Defendant Jones purchased three (3) emulators each invoiced as a "Cobalt Emulators" from the Fulfillment Pirate Group. On that same day, Defendant Jones purchased three (3) unloopers each invoiced as a "Vector UL PRO WTX" from the Fulfillment Pirate Group.

(e)  On or about May 10, 2001, Defendant Jones purchased five (5) combination packages invoiced as a "MK1 Programmer/MK2 Unlooper-WTX" from the Fulfillment Pirate Group. On that same day, Defendant Jones purchased five (5) emulators invoiced as "Cobalt Emulator" from the Fulfillment Pirate Group.

15.  Each emulator purchase consisted of a printed circuit board device designed specifically to permit the surreptitious interception of DIRECTV Satellite Programming. Each

unlooper consisted of a device designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices. The programmer is primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. The combination package consisted of an unlooper and a programmer. The programmer is primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. The unlooper consisted of a device designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices.

16. Upon information and belief, due to the number of purchases made by Defendant Jones, Defendant Jones resold the devices to other individuals, and/or provided guidance for use of the devices, for a profit. The devices were shipped to Defendant Jones at Defendant's address in Harlingen, Texas.

17. Upon information and belief, Defendant displayed Satellite Programming and such Satellite Programming was displayed without authorization from DIRECTV. Importantly, Defendant's possession and use of Pirate Access Devices provided him access to all television programs transmitted by DIRECTV, including access to all pay-per-view movies, boxing and other special programs, and sports programming at all times. The value of the programs that Defendant was capable of viewing without authorization may easily reach $100,000 in a single year.

18. On information and belief, DIRECTV alleges that Defendant received the Satellite Programming by means including but not limited to: (a) maintaining Satellite Dishes capable of receiving satellite programming on television monitors and further maintaining electronic devices which enable them to unscramble, receive, and exhibit encrypted Satellite Programming transmissions without authorization; and/or (b) by such other means to effectuate the unauthorized reception of the Satellite Programming which are unknown to DIRECTV and known only to Defendant.

19. Importantly, the number of devices purchased is a clear indication that Defendant was engaged in an enterprise to distribute and/or resell the devices purchased from the Fulfillment Pirate Group. Upon information and belief, Defendant profited from his distribution enterprise.

## VI. ACTIVE CONCEALMENT OF ILLEGAL CONDUCT & DIRECTV'S DISCOVERY

20. DIRECTV devotes significant resources to preventing the unauthorized reception of its Satellite Programming and identifying persons or businesses engaged in such illegal activity. Despite those efforts, DIRECTV first learned of Defendant's identity, and his involvement in pirating Satellite Programming, in May of 2001.

## VII. CAUSES OF ACTION

**Count 1 - Damages for Willful Manufacturing, Assembly, Modification, Sale, Distribution, Exportation and/or Importation of Devices or Equipment**
**(47 U.S.C. § 605(e)(4))**

21. DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

22. Upon information and belief, Defendant knowingly manufactured, assembled, modified, sold or distributed electronic, mechanical or other devises or equipment, knowing or

having reason to know that the devises or equipment were used primarily in the assistance of the unauthorized decryption of Satellite Programming, or direct-to-home satellite services, or were intended for any other prohibited activity. More specifically, upon information and belief Defendant actively purchased the hardware necessary to program Pirate Access Devices, participated in the design manufacture and/or programming necessary to activate such Pirate Access Devices and distributed such Pirate Access Devices to others for a profit. Moreover, by actively removing and inserting illegally programmed Access Cards into valid DIRECTV receivers, Defendant engaged in the unlawful assembly and/or modification of devices primarily of assistance in the unauthorized decryption of Satellite Programming.

23. Such conduct by Defendant violates 47 U.S.C §605(e)(4) and such activity DIRECTV entitles to statutory damages in a sum not less than $10,000 or more than $100,000, for each violation. 47 U.S.C. §605(e)(3)(C)(II). Each device purchased by Defendant constitutes a separate violation. 47 U.S.C. §605(e)(4). DIRECTV is a person aggrieved by the Defendant's independent violations of 47 U.S.C. §605 and is authorized to institute this action against Defendant pursuant to 47 U.S.C. §605 (e)(3)(A).

24. Due to Defendant's purchase of twenty-four (24) devices, DIRECTV requests a recovery against Defendant of $100.000.00 per device, plus attorney's fees and costs associated with the prosecution of this matter in accordance with federal law. 47 U.S.C. §605(e)(4) and (e)(3)(B)(iii).

### Count 2 - Damages for Violations of Cable Communications Policy Act
### (47 U.S.C. §605(e)(3)(C))

25. DIRECTV incorporates by reference the foregoing paragraphs of this complaint as if fully set forth herein.

26. DIRECTV alleges on information and belief, that Defendant effected unauthorized interception and receipt of Satellite Programming through use of illegal satellite decoding devices, or by manipulation of the satellite system authorized to carry the Satellite Programming where Defendant is located, or by such other means which are unknown to DIRECTV and known only to Defendant.

27. Each of Defendant's acts violates federal law. Defendant illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception or exhibition of Satellite Programming transmitted by DIRECTV. Moreover, upon information and belief Defendant divulged or published the existence contents, substance, purport, effect or meaning of such satellite communications. Further, upon information and belief Defendant used such communications for his own benefit or for the benefit of others who were not entitled to such communications. Finally, upon information and belief, Defendant manufactured, distributed and/or sold Pirate Access Devices to assist others in the unauthorized reception and use of Satellite Programming. Each of these acts is a practice prohibited by 47 U.S.C §605(a). More importantly, Defendant's actions as a distributor of Pirate Access Devices constitutes a willful violation of 47 U.S.C. §605(a) for purposes of commercial advantage or private financial gain.

28. DIRECTV is a person aggrieved by the Defendant's violations of 47 U.S.C. §605 and is authorized to institute this action against the Defendant pursuant to 47 U.S.C. §605 (e)(3)(A).

29. Defendant's violations of 47 U.S.C. § 605 have injured and will continue to injure DIRECTV's ability to maximize the revenues which it seeks to derive from the Satellite Programming, as DIRECTV has been deprived of the benefit of subscribers to the Satellite

Programming. DIRECTV is entitled to costs, reasonable attorney's fees actual damages suffered, and profits obtained by Defendant attributable his illegal conduct.

30. Alternatively, DIRECTV is entitled to statutory damages in an amount not less than $1,000 nor more than $10,000 for each violation of 47 U.S.C. §605(a).

### Count 3 - Damages for Violations of 18 U.S.C. §2511

31. DIRECTV realleges the allegations contained in the foregoing paragraphs of this Complaint and incorporates such allegations as if fully set forth herein.

32. For further cause of action, DIRECTV alleges that Defendant intentionally intercepted, or endeavored to intercept, or procured other persons to intercept electronic communications from DIRECTV. Defendant further disclosed or endeavored to disclose to others the contents of electronic communications, knowing or having a reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C. §2511. Upon information and belief, Defendant further intentionally used or endeavored to use the contents of electronic communications, knowing or having reason to know that the information was obtained through the interception of electronic communications in violation of 18 U.S.C §2511.

33. DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C §2511.

34. Due to Defendant's wrongful conduct, DIRECTV is entitled, under 18 U.S.C. §2520, to the greater of the sum of (1) actual damages suffered by DIRECTV and the profits made by the Defendant as a result of his conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendant acted in violation of 18 U.S.C. §2511.

### Count 4 - Damages for Possession, Manufacture, and/or Assembly of Electronic, Mechanical or Other Device or Equipment
### (18 U.S.C. §2512)

35. DIRECTV realleges and incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

36. By way of its fourth cause of action, DIRECTV alleges that Defendant possessed, manufactured, and/or assembled an electronic, mechanical or other devices, knowing or having a reason to know that the design of such devices render them primarily useful for the purpose of the surreptitious interception of wire or electrical communications, and that such devices or any component thereof have been or will be sent through the mail or transported in interstate or foreign commerce. More particularly, Defendant himself, or someone at his direction, sent to, and/or received from, the Fulfillment Pirate Group, Pirate Access Devices by means of the United States Postal Service or commercial mail carrier. Moreover, upon information and belief, Defendant actively engaged in programming of Pirate Access Devices.

37. DIRECTV is a person whose electronic communications are being intercepted, disclosed and/or intentionally used in violation of 18 U.S.C §2512.

38. Due to Defendant's wrongful conduct, DIRECTV is entitled, under 18 U.S.C. §2520, to the greater of the sum of (1) actual damages suffered by DIRECTV as a result of his conduct, or (2) statutory damages in an amount the greater of $10,000 or $100 per day for each day Defendant acted in violation of 18 U.S.C. §2512.

### Count 5 - Civil Conversion

39. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

40. By virtue of the conduct set forth above, Defendant has unlawfully converted DIRECTV's property for his own commercial use and benefit.

41. Such conversion was done intentionally and wrongfully by Defendant to deprive DIRECTV of its proprietary interests and for Defendant's direct benefit and advantage.

42. Due to Defendant's wrongful conversion of DIRECTV Satellite Programming, DIRECTV suffered damages.

### Count 6 – Interception of Communication
(TEX. CIV. PRAC. & REM. CODE § 123.001, *et. seq.*)

43. DIRECTV hereby incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

44. DIRECTV transmits satellite communications in part by wire or cable. More specifically, the Satellite Dish, receivers and television necessary to utilized DIRECTV's Satellite Programming are connected by wire and cable. Finally, DIRECTV's Satellite Programming contains information that is obtained and/or perceived by aural acquisition, particularly including all audio communication services that accompany video transmissions.

45. Upon information and belief, Defendant acquired and/or used Pirate Access Devices to intercept, or attempt to intercept, DIRECTV's Satellite Programming information constituting an extraordinary use of satellite and television viewing equipment. Defendant's conduct violates Chapter 123 of the Texas Civil Practices and Remedies Code. As a result of Defendant's conduct, DIRECTV may obtain statutory damages of $10,000 for each occurrence, punitive damages and reasonable attorney fees and costs.

### VIII. REQUEST FOR INJUNCTIVE RELIEF

46. DIRECTV realleges and incorporates the allegations contained in paragraphs 1 though 43 as if fully set forth herein.

47.     DIRECTV further alleges that unless restrained by this Court, the Defendant will continue to receive, intercept, transmit, and exhibit the Satellite Programming, illegally and without authorization, in violation of 47 U.S.C. §605.

48.     The violations of 47 U.S.C. §605 set forth above have caused and will continue to cause DIRECTV irreparable harm.

49.     DIRECTV cannot practicably determine the loss of subscribers and lost revenues resulting from the Defendant's unlawful conduct. In addition to diminishing DIRECTV's revenues, the Defendant's unlawful conduct injures DIRECTV's reputation and goodwill as well as its ability to attract and finance the future acquisition, production, and distribution of quality programming, thereby impairing DIRECTV's ability to enhance its future growth and profitability. DIRECTV has no adequate remedy at law to redress the violations set forth above.

50.     Further, DIRECTV is entitled to preliminary and other equitable or declaratory relief as may be appropriate under the circumstances in accordance with 18 U.S.C. §2520(b)(1). DIRECTV requests that Defendant and any person acting on his behalf be directed to cease the use of any and all Pirate Access Devices, relinquish all such devices to DIRECTV, and not engage in such conduct in the future.

## IX. PRAYER

WHEREFORE, Plaintiff, DIRECTV, INC., prays that this Court enter judgment in its favor and against Defendant in the form as follows:

a.  Declare that Defendant's importation, exportation, modification, possession of illegal access cards or other illegal devices or equipment, unauthorized interception, reception, and exhibition of DIRECTV's electronic communications, or his assistance in the performance of such unauthorized actions, is a violation of 47 U.S.C. §605, 18 U.S.C. §§2511 & 2512, and TEX. CIV. PRAC. & REM. CODE §123.002.

b. Award DIRECTV statutory damages in the amount of $10,000.00 for each violation of 47 U.S.C. §605, plus an additional $100,000.00 for each violation pursuant to 47 U.S.C. §605(e)(3)(C)(ii); alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendant's violations of 47 U.S.C. §605;

c. Alternatively, award DIRECTV statutory damages in the amount of the greater of $10,000 or $100 per day for each day Defendant violated 18 U.S.C. §2511 and/or §2512, or alternatively, DIRECTV requests judgment for actual damages, plus damages equal to any profits attributable to the Defendant's violations of 18 U.S.C. §§2511 or 2512;

d. Alternatively, award DIRECTV statutory damages of $10,000 for each violation of Texas Civil Practices and Remedies Code §123.002;

e. In accordance with 47 U.S.C. §605(e)(3)(B)(i) and 18 U.S.C. §2520(b)(1), enjoin Defendant, and all persons in active concert or participation with him from (i) possessing illegal access cards or other illegal devices or equipment (ii) interfering with DIRECTV's proprietary rights, (iii) intercepting, receiving, divulging, or displaying DIRECTV's Satellite Programming without prior written consent of DIRECTV; and (iv) acting in further violation of the above-described statutes;

f. That this Court award DIRECTV punitive damages as provided by statutory law;

g. That this Court award DIRECTV its costs, including reasonable attorney's fees, prejudgment and post-judgment interest, and

h. Such other relief to which DIRECTV may be entitled.

DATED this 23rd day of May 2003.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: /s/ Lecia Chaney
Lecia L. Chaney
State Bar No. 00785757
Fed. I.D. #16499

1201 E. Van Buren St.
P.O. Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telefax  : (956) 541-2170

OF COUNSEL:

GREER, HERZ & ADAMS, LLP

**Joe A.C. Fulcher**
Federal ID No. 14126
St. Bar No. 07509320
**Kelly-Ann F. Clarke**
Federal ID No. 27195
St. Bar No. 24027929
**Robert A. Swofford**
Federal ID No. 19403
St. Bar No. 00791765
**Joseph R. Russo, Jr.**
Federal ID No. 22559
St. Bar No. 24002879
One Moody Plaza, 18th Floor
Galveston, Tx 77550
(409) 797-3200 (telephone)
(409) 766-6424  (telecopier)